UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DOUGLAS E. PERRY, | ) No. CV 12-01044-VBK |
| Plaintiff, | ) MEMORANDUM OPINION ) AND ORDER |
| v. | ) ) (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

|    |    |    |
|---:|----|----|
| 1  |    | considered the April 5, 2011 opinion of treating physician |
| 2  |    | Adam Ginsberg, D.O., of Lags Spine and Sportscare; |
| 3  | 2. | Whether the ALJ properly gave greater weight to the August |
| 4  |    | 2009 opinions of orthopedic consultative examiner John |
| 5  |    | Simmonds, M.D.; |
| 6  | 3. | With regard to Plaintiff's physical impairments, whether the |
| 7  |    | ALJ properly gave greater weight to the September 2009 |
| 8  |    | opinions of non-examining State Agency physician B. Morgan, |
| 9  |    | M.D., as affirmed by A. Resnik, M.D., based on the same |
| 10 |    | evidence; |
| 11 | 4. | Whether the ALJ properly considered Plaintiff's credibility; |
| 12 | 5. | Whether the ALJ should have secured an updated orthopedic |
| 13 |    | consultative examination; and |
| 14 | 6. | Whether the ALJ properly considered Plaintiff's residual |
| 15 |    | functional capacity. |

(JS at 3-4.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ PROPERLY CONSIDERED THE OPINION**

**OF TREATING PHYSICIAN ADAM GINSBERG, D.O.**

The ALJ found that Plaintiff has severe impairments of thoracic cyst, a protrusion with probable nerve root impingement and possible radiculopathy, neural foraminal narrowing, and myofascial pain. (AR 14.) After examining the medical evidence, and finding that Plaintiff

2

does not have a Listing level impairment, the ALJ assessed the following residual functional capacity ("RFC"): Plaintiff can perform a wide range of medium work.  He cannot lift or carry more than 50 pounds occasionally or 25 frequently.  He cannot sit, stand, or walk longer than six hours in an eight-hour workday.  He is limited to frequent, but not constant bending, stooping, crouching, crawling, kneeling, walking on uneven terrain, climbing ladders, and working at unprotected heights. (AR 16.)

Plaintiff's credibility with regard to subjective complaints was discussed and depreciated. (AR 16-17.)  A vocational expert ("VE") testified at the hearing and his testimony was cited and relied on in the Decision. (AR 18, 49-69.)

At the last step of the five-step evaluation process, the ALJ found that Plaintiff is capable of performing his past relevant work. (AR 19.)  Thus, a finding of non-disability was made.

In his first issue, Plaintiff cites to a one-page letter to his present counsel (who also represented him in the underlying administrative proceedings). (AR 360.)  This letter was written by Adam Ginsberg, a doctor of osteopathy working at the Lags Spine and Sportscare facility ("Lags").  Although a portion of the aforesaid letter pertains to possible concerns as to Plaintiff's mental state, Plaintiff has indicated he is not relying upon any statements in Dr. Ginsberg's letter pertaining to this issue. (<u>See</u> JS at 30.)

As reflected in Dr. Ginsberg's letter, he primarily treated Plaintiff for pain emanating from spinal problems.  Dr. Ginsberg concluded that Plaintiff had degenerative disc and joint disease across a significant portion of his spine.  It is noted that most of Dr. Ginsberg's letter appears to simply summarize Plaintiff's

3

subjective reporting as to his pain and its functional effects.

The ALJ summarized Dr. Ginsberg's letter and its conclusions. Dr. Ginsberg did not assess any functional limitations.

Dr. Ginsberg's assessments, to the extent he made any, were rejected by the ALJ for the following reasons:

> "... they were brief, conclusory and totally unsupported by objective medial findings. They were also inconsistent with the weight of the medical evidence. Dr. Simmonds reported a normal examination and concluded the [Plaintiff] could perform medium work. Dr. Morgan also concluded the [Plaintiff] could perform a full range of medium work and stated there was an absence of physical findings."

(AR 18.)

Plaintiff contends that as a treating physician, Dr. Ginsberg's opinion should be accorded the greatest weight, and should be given controlling weight if it is well supported by underlying objective evidence and is not inconsistent with other substantial evidence in the record. (JS at 14, citing 20 C.F.R. § 1527(e)(2), Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). As the Court's discussion will indicate, however, Dr. Ginsberg's report is brief and conclusory, it is not supported by the objective medical evidence, and in fact it is contradictory to medical evidence based upon independent examination.

Initially, the Court will reiterate the often observed axiom in Social Security cases that the existence of impairments does not equate to a disabling condition. Rather, there must be functional limitations established by objective evidence, and, if appropriate,

4

corroborated by subjective symptoms, which establish the disability. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In this case, the ALJ cited contradictory objective evidence, and provided reasons based on substantial evidence for rejecting the conclusory statements of only one of Plaintiff's treating providers.

An orthopedic consultative examination ("CE") was performed on August 28, 2009 at the request of the Department of Social Services by Dr. Simmonds. (AR 247-251.) The Court notes that Dr. Simmonds, as an orthopedist, is a specialist who may be viewed as having greater expertise in spinal issues than a doctor of osteopathy. In any event, Dr. Simmonds performed a complete examination, and despite agreeing that Plaintiff had certain pain symptoms, assessed an exertional ability that equates to the requirements of medium work. (AR 250-251.)

As a further reason to depreciate the level of deference which might be accorded to Dr. Ginsberg's conclusions, the ALJ observed that Dr. Lagattuta, a medical doctor who acted as the Medical Director of Lags (where Dr. Ginsberg was employed), and who also was Plaintiff's treating physician, provided reports of numerous examinations of Plaintiff that he conducted. (AR 314-326.) Dr. Lagattuta did not assess any functional limitations.

The medical records contained in the AR do not support the extreme conclusions which Dr. Ginsberg endorsed as to Plaintiff's pain and functional limitations. These records indicate mild degenerative disc changes in Plaintiff's neck, thoracic spine and his lumbar spine. (AR 311-313.)

There is also contrary evidence from Santa Barbara County Public Health, where Plaintiff received treatment (AR 15-16, 337, 352, 329-359.) Many of these records indicate that Plaintiff was non-compliant

with his prescribed medication, which in and of itself, is grounds for denying disability. See 20 C.F.R. § 404.1530(a)-(b).

The ALJ also justifiably relied upon the conclusions of non-examining state doctors, Morgan and Resnik, who concluded that Plaintiff could perform medium work, and accorded Plaintiff's complaints only partial credibility. (AR 15, 252-257, 270-273, 310.) Dr. Morgan concluded that Plaintiff could perform a full range of medium work. (AR 15, 253.) The conclusions of these non-examining physicians were consistent with the other objective clinical findings which the Court has briefly summarized. The ALJ was entitled to rely upon these non-examining physicians in that their conclusions were consistent with the reports of examining physicians. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

In sum, essentially all of the objective medical evidence, including the conclusions of the Medical Director of his own clinic, contradicts Dr. Ginsberg's conclusions. Plaintiff complains that the ALJ may not reject Dr. Ginsberg's opinion simply because there are contradictory findings of other physicians in the record. Clearly, that is not what happened in this case. Rather, the ALJ provided significant and certainly substantial reasons based on evidence in the record to reject Dr. Ginsberg's conclusions. As such, the Court finds no error with regard to Plaintiff's first issue.

The Court's discussion and resolution of the first issue controls the determination of Plaintiff's second issue, which is whether the ALJ properly gave greater weight to the opinion of Dr. Simmonds than to that of Dr. Ginsberg. No further discussion is merited. This issue has no merit.

Plaintiff's third issue, which challenges the ALJ's reliance on

the opinions of the non-examining physicians as against that of Dr. Ginsberg, is also subsumed within the first issue. The Court will point out, however, that the ALJ did not simply favor the opinion of the non-examining physicians over that of Dr. Ginsberg; rather, it was the entirety of the objective evidence, which includes a substantial amount of contradictory evidence from examining physicians, and even Dr. Ginsberg's clinic, that constituted the basis for the ALJ's rejection of Dr. Ginsberg's conclusions. Thus, the Court finds no merit with regard to Plaintiff's third issue.

## II

### THE ALJ PROPERLY ASSESSED PLAINTIFF'S CREDIBILITY

The ALJ concluded that Plaintiff's testimony at the hearing concerning his subjective symptoms was not credible to the extent he alleged an inability to perform any work. (AR 17.) The ALJ summarized Plaintiff's testimony (AR 17), and Plaintiff does not dispute the accuracy of this summary. Indeed, the testimony was extreme, including assertions that Plaintiff uncontrollably drops objects from his hands, has decreased sensation in his lower extremities; could not raise his arm to take the oath at the hearing; is in agony from chronic pain; can barely breathe due to the severity of the pain, and similar extreme claims.

The ALJ cited several reasons for discounting Plaintiff's credibility. (AR 18.) The Court's task is to determine if these reasons are supported by substantial evidence in the record, and with regard to subjective pain testimony, whether specific and sufficient credibility findings were made. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Social Security Ruling ("SSR") 96-7p. The Court will

7

assume that the holding of <u>Lester v. Chater</u>, 881 F.3d 821, 834 (9th Cir. 1995) applies, so that it must be determined whether "clear and convincing" reasons for rejecting the credibility were set forth in the Decision.

Plaintiff complained he had trouble concentrating due to mental issues. There is no evidence of any mental impairment or mental health treatment in the record. This is a valid reason to depreciate a claimant's credibility.

The ALJ relied upon the opinions of numerous medical sources as to Plaintiff's non-disability. As the Court has previously noted, it is only Dr. Ginsberg who rendered an opinion that Plaintiff was functionally limited.

Plaintiff objects to the ALJ's utilization of his inadequately explained failure to follow prescribed treatment as being overly general and not relevant. The ALJ provided specific examples. He contrasted Plaintiff's testimony that medication does not relieve his pain with subsequent statements that he does take narcotic pain medication at night. (AR 17.) With regard to side effects from medication, it is Plaintiff's burden to prove medication side effects. See <u>Miller v. Heckler</u>, 770 F.2d 845, 849 (9th Cir. 1985). In Plaintiff's case, there is no objective evidence that substantiates disabling side effects from medication.

Another reason cited by the ALJ was that despite Plaintiff's extreme pain complaints, he received generally conservative treatment and chiropractic care. Plaintiff asserts that surgical intervention was unavailable, and he had in fact been recommended to receive surgical consultations. All in all, though, the Court agrees that in light of the frankly extreme claims made by Plaintiff as to disabling

pain, the conservative treatment he was prescribed and received from various health care sources belies his pain contentions and is relevant to the credibility analysis.

Plaintiff similarly complains that it was unfair for the ALJ to cite his fragmented work history, and asserts that he did work, but simply did not make much money over the years. But the record does indicate a somewhat fragmented work history. (AR 17, 18, 117, 118-121, 122.) It is the ALJ's task to interpret this evidence, which is not something that the Court will second-guess.

The ALJ also cited inconsistencies in Plaintiff's testimony as to what caused his disabling condition. He claimed at various times that he had an accident in 2006, or a motor accident in 2007, but this may be fairly contrasted to his admission to Dr. Simmonds that he stopped working in 2007 when he was fired, and was not due to any medical condition. (AR 247.)

There were also inconsistencies in other aspects of Plaintiff's testimony which the ALJ noted. He complained about severe problems gripping with his hands. Plaintiff argues that this is an irrelevant factor because there is no present issue of gripping with his hands, but again, the Court finds that this postulation of the law in incorrect. The medical evidence of record provides no support whatsoever for the extreme symptoms that Plaintiff complained about gripping with his hands.

Even if some of the cited reasons for credibility depreciation are not given substantial weight, as a whole, there is compelling evidence provided in the record and cited in the Decision to depreciate Plaintiff's credibility. For that reason, the Court finds no merit as to issue no. 4.

## III

## **THE ALJ WAS NOT REQUIRED TO OBTAIN**

## **A SECOND ORTHOPEDIC CONSULTATIVE EXAMINATION**

Plaintiff contends that because of his worsening condition following Dr. Simmonds' CE, the ALJ should have obtained a consultative orthopedic examination. Plaintiff cites 20 C.F.R. § 404.1519a(b) for the proposition that a change in condition likely to affect ability to work mandates a supplemental CE.

Plaintiff's issue has no merit because there was no ambiguity in the record that would mandate further testing. See Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). Moreover, the Court disagrees with Plaintiff's contention that his medical condition and symptomology had deteriorated. These claims have already been addressed in this Opinion.

Plaintiff's sixth issue essentially reiterates other issues already raised. He asserts that the ALJ did not properly assess his RFC. Again, Plaintiff relies on the opinion of Dr. Ginsberg which the ALJ discounted, and this Court affirmed. The ALJ relied upon substantial and competent medical evidence, and evaluated all evidence, including Dr. Ginsberg's opinion, in determining Plaintiff's RFC. The Court finds no error whatsoever in the ALJ's determination.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: January 17, 2013        /s/
                               VICTOR B. KENTON
                               UNITED STATES MAGISTRATE JUDGE

10